BUTLER & CO. v. P. N. STAINBACK, and others.

*Equity—Marshalling Assets—Mortgage—Trust—Homestead.*

1. Equity will not displace one right to uphold another.
2. The doctrine of marshalling securities does not apply where one security is given and expressly declared to be in exoneration of another, though other interests are involved in the latter security and it is insufficient to protect all of them.
3. Mortgage of land to R. & Co., and afterwards a deed in trust by same party conveying other property to secure them and other creditors; *Held*, that R. & Co. are entitled to share *pro rata* in the proceeds of the trust sale, so as to exonerate *pro tanto* the mortgaged premises and relieve the mortgagor's homestead.

(*Cheatham* v. *Jones*, 68 N. C., 153; *Curlee* v. *Thomas*, 74 N. C., 51, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1882, of HALIFAX Superior Court, before *Bennett, J.*

Defendants appeal.

*Mr. Thomas N. Hill,* for plaintiffs.
*Messrs. Mullen & Moore,* for defendants.

RUFFIN, J.  The record in this case discloses but a single issue, raised by demurrer of the plaintiffs to the answer of the defendants, A. L. Stainback and wife.

The facts of the case are as follows:  On the 9th day of March, 1881, the defendants, T. M. White and A. L. Stainback, as partners and as individuals, and their wives, executed a mortgage to the defendants, Rountree & Co., to secure to them a debt of about $8,000, wherein were conveyed a storehouse and lot then occupied by the firm, the residence of White and the residence of Stainback.

The residence of White, so conveyed, and the one undivided half of the storehouse and lot are the property of Mrs.

White; and the residence of Stainback is his individual property, and the other half of the storehouse and lot is the firm property.

On the 6th day of February, 1882, the said firm of White & Stainback executed to the defendant P. N. Stainback a deed, wherein, after reciting the fact that they had previously given the mortgage, including the separate property of Mrs. White, and that they were desirous of paying the debt thereby secured, in order to relieve her estate, they conveyed all their firm assets, consisting of goods and evidences of debt, in trust to sell and collect, and with the proceeds to pay, as constituting the first class, certain enumerated debts, ten in number, and aggregating some $13,000, including the debt of Rountree & Co. for $8,000, and a debt of $1,112.24 due the plaintiffs.

The fund in the hands of the trustee is insufficient to pay the whole of the preferred debts, and the plaintiffs, while conceding for the present that so far as Mrs. White's separate property is embraced in the mortgage, she is a surety and entitled to be exonerated, insist, that they have an equity to compel the defendants, Rountree & Co., to resort for the payment of their debt to the other half of the store-house lot and the residence of Stainback, and to exhaust them before they can be allowed to participate in the funds in the hands of the trustee, and to enforce this equity is the purpose of their action.

On the other hand the defendants, Stainback and wife, insist that, as to the plaintiffs and all the other creditors of the firm, they are entitled to a homestead in their residence embraced in the mortgage to Rountree & Co., and to have the funds in the trustee's hands applied ratably to all the preferred debts, including that to Rountree & Co., so, as far as possible, to relieve their homestead, and in their answer they ask that this may be done.

The plaintiffs demur to this answer upon the ground that

the facts of the case do not in law establish a right in the defendant, Stainback, to have a homestead superior to the equity claimed by the plaintiffs.

The judge presiding in the court below sustained the demurrer, holding that the defendants, Rountree & Co., could not participate in the trust fund, until they had exhausted the real estate of A. L. Stainback conveyed in the mortgage, and requiring them to look to that and the undivided half of the storehouse belonging to the firm, as their first source of payment.

To this administration of the rights and equities of the several parties, this court is unable to give its concurrence.

In the first place, the deed of the 6th of February, 1882, expressly provides that the debt due to Rountree & Co. shall share in the benefits of the trust with the other debts therein enumerated, as preferred. It matters not what motive prompted such a provision, the makers of the deed, who were the owners of the property conveyed, and therefore competent to dispose of it upon any terms not inconsistent with the policy of the law and the demands of good faith, have affixed to the trust this condition, that a ratable part of the fund raised thereunder should go to the debt to Rountree & Co., as a *pro tanto* exoneration of the lands hitherto conveyed to them by mortgage. The plaintiffs, while accepting the benefits of the trusts and seeking as they are to have distribution under it, cannot be permitted to object to the terms imposed. They are themselves enjoying a preference over the unsecured creditors of their common debtor and it poorly becomes them to cavil at the terms upon which they are permitted to do so.

After a careful examination of all the authorities bearing upon the subject, we have found no case in which the equitable doctrine of marshalling securities has been applied, where one security was given and expressly declared to be in exoneration of another previously given, even though

other interests might be involved in the later security, and it should prove to be insufficient fully to protect them all. Nor indeed can we conceive how it could do so, if in any degree respect is to be shown to the will of the creator of the two securities.

Again, while the doctrine of marshalling securities by which a creditor, having a lien on two funds, will be confined to that fund which is not common to both, is well established, and as was said by Chancellor KENT in *Cheeseborough* v. *Millard*, 1 John., Ch. 409, " is recognized in every cultivated system of jurisprudence," still, it is not founded on contract, but rests upon equitable principles only, and the benevolence of the court ; and it is never extended so as either to affect injuriously the creditor who has double security, or trench upon the rights of the common debtor or of third persons. *Ayres* v. *Husted*, 15 Conn., 504 ; *Leib* v. *Stribling*, 51 Md., 288. And especially will a court of equity never displace one equity or right for the purpose of upholding or asserting another.

The defendant in this case, it is true, has encumbered his homestead with a mortgage ; but, save as to the creditor therein secured, his right of homestead remains, and if by a proper application of the other property of the firm conveyed in the same mortgage, and of that part of the trust fund specially appropriated to the satisfaction of the mortgage debt, his homestead can be disencumbered, he has a clear right to have it done. *Cheatham* v. *Jones*, 68 N. C., 153. There can be no principle of equity which will deprive him of this right merely in order that a creditor, to whom no lien upon the homestead has been given, may reap a larger dividend from another fund.

To apply the principle of marshalling assets in such a case, would be but an indirect way of subjecting a homestead to the payment of debts, when the very object of the law is to confer a homestead exemption superior to all cred-

itors, and ever consecrated, except so far as it may be impaired by the voluntary act of the claimant himself.

In *Maw* v. *Lewis*, 31 Ark., 203; *Dickson* v. *Chom*, 6 Iowa 19, and *McArthur* v. *Martin*, 23 Minn., 74, we have authorities directly in point. In each case a creditor had a mortgage on two tracts of land, and another creditor held a mortgage on one of the tracts, and the latter sought to compel the former to exhaust the tract not embraced in his mortgage first, it being however the one in which the mortgagor claimed a homestead; and it was held by reason of the mortgagor's equity (it being one which the courts favor) the securities should not be marshalled.

Though not directly in point, no decision can furnish a stronger analogy or serve more certainly to show the disposition of the courts to favor such exemptions, than that rendered by this court in *Curlee* v. *Thomas*, 74 N. C. 51, in which a judgment was not allowed to be set off by another judgment upon the ground that it was needed to make up the party's personal property exemption; and this, notwithstanding the equitable jurisdiction to set off cross-judgments has been immemorially exerted, and certainly is as firmly established on the basis of reason, and appeals as strongly to the sense of justice, as does the doctrine of marshalling assets, on which the plaintiffs in this action rely.

In the opinion of this court, therefore, it was error in the court below to sustain the demurrer, and the judgment thereof is reversed, and judgment will be entered here overruling the plaintiff s' demurrer, and the same will be certified to the end that the cause may be proceeded with in reference to the issues involved.

Error.                          Judgment accordingly.