**In the Matter of Plummer N. MILLS and Evelyn A. Mills, Debtors.**

**Bankruptcy No. 82–02365–4.**

United States Bankruptcy Court, E.D. North Carolina.

May 3, 1984.

---

David C. Francisco, Washington, N.C., for Pamlico Chemical Co., Inc.

Trawick H. Stubbs, Jr., New Bern, N.C., for debtors.

## MEMORANDUM OPINION

THOMAS M. MOORE, Bankruptcy Judge.

This matter comes on to be heard upon the motion of Pamlico Chemical Company, Inc., a creditor, for the marshalling of assets and the distribution of funds.

After considering the pleadings, the evidence, and the arguments of counsel, the Court finds the facts to be as follows:

## FINDINGS OF FACT

The debtors filed a petition under Chapter 11 of the Bankruptcy Code on November 30, 1982. The debtors have filed a plan of reorganization which is a plan for the orderly liquidation of assets and distribu-

tion of funds to creditors. There is no interest in property being retained by the debtors.

At the time of filing their Chapter 11 petition, the debtors owned 510.23 acres of farmland. The Federal Land Bank (FLB) held a note secured by a first deed of trust on 314.62 acres of land. Washington Production Credit Association (PCA) held a second deed of trust on all 510.23 acres of land. Pamlico Chemical Company, Inc., (Pamlico) held a note secured by a third deed of trust on all 510.23 acres of land.

On April 29, 1983, the debtors sold the 510.23 acres of land under an Order of this Court which provided that the sale would be free and clear of all liens and that the liens would attach to the proceeds of sale. The notes secured by the first and second deeds of trust have been or will be paid in full and there will be some proceeds remaining for payment to Pamlico on the note secured by the third deed of trust, but not enough to pay the note in full.

At the time the debtors obtained their loan from the FLB, the debtors executed a Loan and Membership Application which provides that it is a part of all instruments executed as security for the indebtedness. Clause 3 of the application requires the borrowers to subscribe to a stock participation certificate or equity reserve investment in an amount established by FLB. In the present case, the participation certificate or equity reserve was Twenty-Five Thousand and No/100 Dollars ($25,000.00) and this amount was deducted from loan proceeds at the time of closing the loan.

The contract between debtors and FLB provides that in the event of default, the FLB is authorized to convert the certificate or reserve to cash and apply the proceeds against the borrowers' debt. The certificate or reserve is transferrable only to an individual or entity who assumes the loan. The by-laws of FLB provide that the stock shall be retired upon full repayment of the loan and if the loan is in default, FLB may cancel the certificate or reserve and apply the proceeds on the loan. FLB retained possession of the certificate or reserve at all times. The debtors' plan and disclosure statement indicates that the amount due the FLB might vary due to shares of stock which might be applied to the debt.

After the land was sold, FLB was paid in full and, upon payment, FLB paid to the debtors the Twenty-Five Thousand and No/100 Dollars ($25,000.00) representing the participation certificate or equity reserve. Subsequent to the money being returned to the debtors, the creditor, Pamlico, filed the motion now being considered.

## ISSUES

The issues are whether the equitable doctrine of marshalling should be applied in distributing the Twenty-Five Thousand and No/100 Dollars ($25,000.00) received from FLB so as to permit payment of the same on the debt to Pamlico and, if not, should the cost of the sale be charged against the estate generally rather than the proceeds from the sale of the land so as to increase the distribution to Pamlico?

## CONSIDERATION OF ISSUES

Pamlico contends that the Twenty-Five Thousand and No/100 Dollars ($25,000.00) participation certificate or equity reserve was not a "stock" transaction and that it merely created a reserve account. However, regardless of the character of the transaction, FLB had a valid perfected security interest in the property by reason of having possession of the same. N.C.GEN. STAT. § 25-9-304.

At the time the debtors filed their petition an automatic stay was invoked against the FLB. 11 U.S.C. § 362(a)(4) prohibited FLB from taking any act to enforce any lien against property of the estate. 11 U.S.C. § 362(a)(7) prohibited FLB from setting off any debt owing to the debtors that arose before the commencement of the case against any claim against the debtors.

Bankruptcy courts have the powers of courts of equity. 28 U.S.C. § 1481. As a result, they have the power to order the marshalling of assets where appropriate. *Virginia Block Co. v. Bank of Christians-*

*burg (In re Virginia Block Co.),* 6 B.R. 670 (Bkrtcy.W.D.Va.1980).

■ The doctrine of marshalling is recognized in the State of North Carolina. *Dixieland Realty Co. v. Wysor,* 272 N.C. 172, 158 S.E.2d 7 (1967). The doctrine of marshalling is an equitable doctrine which may be applied by the court for the benefit of a junior lien creditor when the junior lien creditor and senior lien creditor are dealing with a common debtor who owns two or more properties and the senior lien creditor has a lien on two or more of the debtors' properties and the junior lien creditor has a lien on less of the property than the senior lien creditor. *Dixieland Realty Co. v. Wysor, supra.* The right of a junior lien creditor to have the debtors' assets marshalled is not a lien, or a vested interest, but only an equity. The right does not exist at the time the security interest is taken, but is to be determined at the time the marshalling is requested. *Stokes v. Stokes,* 206 N.C. 108, 173 S.E. 18 (1934).

■ The doctrine of marshalling is not applied to the facts of a case unless equity favors its application. In North Carolina, the doctrine is not applied to defeat a widow's right of dower. *Stokes v. Stokes, supra.* Nor is it applied to defeat the right of homestead. *Butler & Co. v. Stainback,* 87 N.C. 216 (1882). Furthermore, the doctrine will not be applied if it hinders, imposes a hardship or inconveniences the paramount creditor in the collection of his debt, or deprives him of his rights under his contract by displacing or impairing his lien or contract right. *Dixieland Realty Co. v. Wysor, supra.*

■ As between a secured creditor and a debtor in a state court proceeding, the equities favor the secured creditor. If the position of a junior lienor can be enhanced without prejudice to the senior lienor, then as between the debtor and junior lienor, the doctrine should be applied. However, in a bankruptcy proceeding, the debtor is insolvent and the rights of unsecured creditors must also be considered. In this case, if the doctrine of marshalling is applied to benefit Pamlico, it will be detrimental to the unsecured creditors of the debtors.

■ Pamlico's request for the marshalling of assets was not made to this Court until after the land had been sold by the debtors, the FLB paid in full and the Twenty-Five Thousand and No/100 Dollars ($25,-000.00) returned to the debtors. When Pamlico requested the marshalling of assets, the FLB had no lien on the debtors' assets. The lien had been terminated by the earlier redemption of the stock and the payment of the proceeds to the debtors. Accordingly, at the time of Pamlico's request for marshalling, there were no assets to marshall. *Stokes v. Stokes, supra.* It should also be noted, that even if Pamlico had requested that the assets be marshalled before the land was sold, the application of the doctrine would have required the senior lien creditor, FLB, to file an adversary proceeding or a motion to lift the automatic stay so as to proceed against its security interest in the participation certificate or equity reserve. This would have imposed a hardship or inconvenience on the senior lien creditor which is contrary to the doctrine of marshalling. *Dixieland Realty Co. v. Wysor, supra.*

Pamlico argues that since the Court has the funds representing the asset which might have been marshalled, the Court could simply direct that the funds be applied as though the assets had been marshalled. If only the rights of the debtor, senior lienor and junior lienor were affected, this argument would be convincing. However, if the doctrine of marshalling is applied in this case, the funds available for the unsecured creditors will be diminished. It should be remembered that the junior lienor contracted with the debtor for its lien. It could have required more security or declined to extend credit, but it failed to do so. Now it requests this Court to apply the doctrine of marshalling to enhance its position at the expense of unsecured creditors.

Pamlico further contends that the Federal Land Bank agreed to retire its "stock"

before claiming the proceeds received from the sale of the land. However, the property was sold by the trustee in bankruptcy and no action had been taken by the Federal Land Bank to retire the "stock" prior to receiving payment from the trustee. If such an agreement was made, it will not affect the decision in this case since the stock had not been redeemed by the debtors prior to payment of the Federal Land Bank by the trustee in bankruptcy.

Pamlico's request for the Court to charge all cost of administration against the unencumbered monies in the debtors' estate would, if granted, further deplete the funds available for unsecured creditors. The secured creditors, including Pamlico, have agreed that the costs of the sale of the land will be paid from the proceeds of sale and there is no justification for changing the agreement to accommodate Pamlico at the expense of the unsecured creditors. However, the application for compensation and expenses filed by the debtors' attorney will be carefully reviewed and all charges not clearly related to the cost of the sale of the debtors' land will be charged against the unencumbered monies in the debtors' estate.

## CONCLUSIONS OF FACT AND LAW

The Court concludes that Pamlico's request for marshalling was not timely made. *Dixieland Realty Co. v. Wysor, supra.* Accordingly, the doctrine of marshalling should not be applied in this case. *Stokes v. Stokes, supra.* The Court further concludes that Pamlico's request for all costs of administration to be paid from unencumbered monies in the estate should be denied and that the costs of the sale of the debtors' real property shall be charged against the proceeds received from the sale of the land and all other costs of administration shall be paid from unencumbered monies.

An Order will be entered accordingly.